The argument today is 20-1916, Kroy IP Holdings v. Groupon. Mr. Waldrop, please proceed. Good morning, and thank you, Chief Judge Miller and the Court. Now, I would like to talk about two reversible errors related to the claim construction errors made by the Board that should be reversed. First, incentive program builder application, and second, receiving a request to validate the award from a sponsor. As to the Board's erroneous claim construction as it relates to requests for search for promotions, Kroy will rest on the briefing. We request this Court adopt Kroy's claim constructions, vacate the Board's claim constructions, reverse the Board's decisions in the 044 and 061 petitions because they rest on incorrect claim constructions and are not supported by substantial evidence. Now, it is important to remember what the 660 patent claims. First, it claims a three-computer system involving a host computer, a sponsor computer, and a consumer computer that allows a sponsor to build incentive programs with an incentive program builder application at the host. That application builds incentive programs. The consumer then selects from a plurality of these sponsor-built incentive programs. An award is issued to the consumer, and the host receives a request from the sponsor to validate the award, and the award is validated. Now, as to the 044 petition and incentive program builder application, the Board's claim construction of that term is overbroad because it encompasses applications that only modify parameters of preexisting incentive programs and cannot generate or create or build a new incentive program. The PTAP's construction construed that term as an application for building incentive programs, which includes both building new programs from scratch and modifying preexisting programs. The Board, however, only cited one part of the specification for supporting its construction. Wait, this is Judge Dyck. As I read your brief, you seem to agree that build can include both building from scratch and building from a template, and certainly the specification seems to suggest that that's the case. Am I mistaken about what your argument is? Yes, Your Honor, in the sense of, to be clear, CROI's construction encompasses a builder application that functions to modify parameters or existing incentive programs. So long as the application, though, has the defining characteristics of an incentive program builder application, as recited in the claims, meaning the capability to create, build, generate, or create a new incentive program from scratch. So it does not exclude the ability to modify preexisting programs. Did I answer your question, Your Honor? You did, and that seems to be a problem for you because if build includes these modified applications, then that prior art is encompassed within the claims scope that you yourself argue for. Your Honor, we do not agree, Your Honor, because the board's construction is inconsistent with the claim language because there was no finding that any of the prior art, via Kelly, Stanek, or Halter, Wong, has the ability to build from scratch new incentive programs. In fact, the board rejected CROI's construction, which was an application to generate incentive programs, and only applied the part of the construction that talked about modifying preexisting programs. There is no finding in any of the prior art the ability of Kelly, Wong, or Halter to generate new programs. In fact, any such finding on that basis is not supported by substantial evidence and would require improper hindsight. There's absolutely no recitation in any of the prior art the ability to build, create, generate new incentive programs. So even if the court agreed, if this court agreed with the board's construction, there was no application of that construction by both prongs. The board parsed the construction and only applied it to only the ability to modify, but found no evidence whatsoever, and Groupon doesn't even argue this, that those references created or disclosed the ability to create or generate new incentive programs. In fact, Your Honor, the construction which the board, the only passage that the board relied upon for its construction of an incentive program, and I'm directing the court to APX 169, column 14, lines 42 to 49, the passage the board relies on says the sponsor is asked to select among various types of incentive programs. It does not say that the sponsor selects a preexisting incentive program as the first step in building a new program. This error was critical to the board's construction or builder application because it is the only passage that the board relied upon to support its construction that includes a program that can only modify preexisting programs. Consistent with our construction, every... Counselor? Yes. Yes, Your Honor. Counselor, this is Judge Moore. Does your interpretation require the builder application to start from scratch entirely, or does it permit selecting from options, a program that presents options, and then you select which option you would like to add? Yes, Your Honor. And if I can answer your question this way, the patent is clear that the builder allows the user or the sponsor to select different types of programs, like a tournament or a sweepstakes. You can select a type of program, and then the builder then assembles the code and generates a new executable program. The type is not an existing program. It's like selecting a type of car. Do you want a compact or a truck? And it then builds that type. The patent makes very clear in the figures 10 and 11 that the first step of building is different than actually buying a prepackaged game. And, in fact, the specification is very clear that one of the things that the patent was seeking to solve was to solve this issue of having sponsors actually code games separately and the laborious process of actually coding a game. Here, there was a tool, the Incentive Program Builder application, that actually builds the code for you and assembles the objective code for the incentive program. So, yes, Your Honor, if I answered your question. So, I mean, sort of and sort of not. So, just to be clear, a program that allows you to build an incentive program by selecting various already coded options and putting them together in a new way would not suffice, in your view, to meet this claim limitation? It would suffice, Your Honor. Under our construction, yes, Your Honor. Okay, anything further? Yes, Your Honor. Now, consistent with CROI's construction, every other specification passage relative to this term distinguishes between obtaining a prepackaged incentive program versus using the builder application to build a new incentive program. And so, the board only relied on one passage, and that passage was incorrect, Your Honor, because nothing in the art discloses taking a program and using an incentive builder program to generate a new incentive program, Your Honor, and our construction does not exclude that. And nothing in the references cited by Groupon or allowed upon the board showed any ability to create an executable incentive program. Now, moving on to the request to validate from an award, Your Honor, this was also an erroneous claim construction that led to an overbroad application and was not supported by substantial evidence. The board construed receiving a request to validate the award from a sponsor as receiving a request to validate an award that could be sent from anyone, including but not limited to a sponsor. CROI's construction was receiving a request from a sponsor to validate the award. The sponsor validation claim limitations specify two things. One, the type of request and who that request is from. Claim 101, receiving from the sponsor a request to validate the award, once again, a type of request, a request to validate the award, and who is that from? The sponsor. The board found that Claim 101 indicates that the request is from a sponsor. CROI agrees. The board then erred in applying the prior to Claim 101. It concluded that Chalia disclosed this claim step in 101 but found that Chalia only discloses the request from a consumer to validate the award. This is clear error under the board's own reading of Claim 101. As our brief details, the board also concluded that Kelly discloses this limitation while failing to cite or analyze any passage from Kelly that actually discloses this. In fact, Groupon did not even attempt to argue that Kelly discloses this limitation. It only alleged that Kelly would have made the limitation obvious. Reversal of invalidity of Claim 101 is required for this threshold reason. Now, if Claims 7, 1, 7, and 14, which have the language receiving a request to validate the award and who it is from a sponsor, once again, the type of request, request to validate an award, and who it is from a sponsor, the only difference compared to Claim 101 is where the word from a sponsor appears. It's just another way of saying the same thing, Your Honor, and there's a request to validate the award and the request comes from the sponsor. Groupon's petitions admitted that Claims 1, 7, and 14 described the same thing as Claim 101 in their briefing, and despite Groupon's admission, the board found that 1, 7, and 14 didn't indicate the award is from a sponsor, but the request can be from anyone. The board reasoned that Claims consistently used from to modify the immediately preceding word or phrase. The board then arbitrarily concluded that from modifies the word award without recognizing that the more sensible approach is that it modifies the preceding phrase. The board's reading is illogical and contradicts the reading that Groupon gave in its petition, and we believe that the claims should be construed consistently, 1, 7, and 14, and at a minimum, Your Honor, Claim 101 in validity finding should be reversed. I reserve the balance of my time for rebuttal, Your Honor. Say for the 101 issue, if we disagree with you on the build issue, we don't need to reach this from the sponsor question, correct? No, I think you do need to reach that, Your Honor. I thought all of the claims had build in them. All of the claims have build in them, Your Honor, but as a result of the two petitions, Claims 10 and 12 survived in the 061 petition, and as well, the request from a sponsor, Your Honor, relies to Claim 101 in the 061 petition. Okay.  to validate from a sponsor, Your Honor. Did you appeal the 101 on Kelly? Yes, Your Honor. That issue was preserved, Your Honor, because Groupon only argued in its petition that it was obvious, and they conceded by conceding that Kelly did not disclose the request to validate term in Kelly. The board, however, found that Kelly met this limitation, so it is a new issue on appeal and one that CORE must be allowed to address since it was not addressed in the petition, and the board's responding found that Kelly had that limitation. But did you appeal it? Did you actually raise this issue on appeal? Yes, Your Honor. We did raise this issue on appeal. Yes, Your Honor. It's in our briefing. Where? It's in our briefing, Your Honor, in the original briefing, in our original briefing in pages, and I'll point the CORE to the original brief at APX. You're talking about the Bloom brief? Yes, Your Honor. What pages? I will, if you'll give me a minute, Your Honor, I will direct you to that page in the brief, Your Honor, where it was raised, Your Honor. It is raised in pages 54 and 56. 38, Your Honor. And I can deal with this in rebuttal, Your Honor, but it's raised in our brief, Your Honor. Well, you can look and inform us on rebuttal, and let's go ahead and hear from opposing counsel. Mr. Dustin, please proceed. Mr. Dustin, are you muted? Do you have any further questions, Your Honor? No. Can you hear me? I said let's hear from Mr. Dustin. Yes, Your Honor. I apologize. Your Honor, are you there? Your Honor, are you there? Counsel, we just asked to hear from Mr. Dustin, please. Oh, I'm sorry. Thank you. Thank you, Your Honor. May it please the court, the bulk of CROI's arguments in its briefing concern the evidentiary findings of the board, which are reviewed for substantial evidence. It is not enough to offer alternative interpretations of the evidence. The board's interpretation was reasonable. In fact, it was the most reasonable, if not the only reasonable interpretation of the evidence. The remaining claim construction challenges, while reviewed de novo, are premised largely on errors that relies on arguments and evidence that was not presented to the board in the first instance. Nevertheless, the board's constructions are consistent with the intrinsic evidence. CROI's are not, and the board did not err in rejecting CROI's efforts to read additional limitations into its claims. Could you help me on this question of whether the billed issue would take care of this entire case, including claim 101? Are there issues in the case, if we were to agree with you on the billed issue? Are there remaining issues that need to be resolved? All of the challenge claims would remain invalid if the court affirms the decisions on the billed issue, whether that is affirmed by affirming the board's claim construction on that limitation, or if the court were to suggest a different limitation, nevertheless, the findings that the board made about how Kelly operates and how Kelly, in combination with Stanek on the one hand or Wong on the other, would generate, create and build incentive programs. Those descriptions of the way those combinations operate is virtually indistinguishable from the descriptions in the six city, six 60 specification, concerning the way in which a sponsor would build incentive programs using the patented intention. So to answer your question, if, if, uh, if CROI does not win on build, um, then, uh, all the claims stand as invalidated. The argument that you just heard from counsel concerning request to validate, uh, he linked that argument to the old four, four petition, the Kelly petition that argument was not advanced below in respect to Kelly. There were no, no arguments made that the Kelly combinations failed to meet the request to validate limitations. And the board so found that the request to validate limitations were met. So, uh, this is a new argument on appeal intended to try to add an argument to the board's decision. The only decision on Oh four, four really is the building application. Now the in, in, uh, the incentive program building application argument concerning claim construction, the court rightly reject, or the board rightly rejected the attempts by CROI to insert narrower limitations into this construction for three reasons, at least, uh, first of all, this so-called essential element of the invention that CROI council refers to having to do with the ability to, to build from scratch. None of that language, no hint of that concept is contained in the claims. In fact, the claims are addressed to parameters that the sponsor input parameters that are used to build incentive programs. None of the parameters described in the claims would permit the building of an incentive program from scratch. All of the parameters contemplate that there would be preexisting code that was associated with each of these defined parameters, parameters that are defined by the host parameters that are associated by definition with predefined incentive programs that the host has developed. All that the sponsor has the option to do is to select options or to provide choices that are already associated with preexisting code. The term preexisting appears only once in the specification in relation to the incentive programs of the invention. And in fact, where it appears it appears in connection with the building of incentive programs. The incentive program builder application is said to develop incentive programs using appropriate code, preexisting code that it uses and selects when a sponsor makes a, a selection of a parameter. At appendix one 78, when a sponsor has selected all parameters, the incentive program builder can build the incentive program that satisfies all of the parameters by combining preexisting code for each of the individual components in the larger files that embody the entire incentive program. There is no concept in the specification of the ability to build incentive program from scratch. It would be antithetical to the purpose of the invention to place that burden of having to develop a incentive program and it's associated code from scratch on the sponsor. That was exactly the purpose for which the patent announces its invention. In fact, as, as judge Moore pointed out in questions to price counsel, it is hard for even Croy's counsel to draw the line where from scratch begins and ends in the context of the incentive program builder application to adopt that language would have rendered the limitation essentially indefinite. You're on now. Price counsel refers to the distinction drawn in the specification between pre-packaged incentive programs and built incentive programs. But this distinction does not depend on whether or not the content of these programs is preexisting, whether or not the code has already been written. The basic difference really only is whether or not the sponsor is purchasing a, and a center program as is, or whether or not the sponsor has the option to select certain predefined for it defined by the host predefined for it options, a select number of options that it can select, which would determine exactly the makeup of the incentive program. But all of it is preexisting. Now there is a suggestion in the Croy's briefs in the reply, which makes many new arguments, not made below and not made in their opening brief, relying on figure 11, figure 11 is not a definition of the incentive program builder application. Figure 11 is specifically described as an embodiment by which a sponsor could build an incentive program. It's merely an example. It doesn't define this limit date. Moreover, the suggestion that preexisting incentive programs, or rather pre-packaged incentive programs, that the builder application has nothing to do with pre-packaged program, that the specification, according to Croy confirms that the incentive program builder application is not used for preexisting incentive programs. They leap from that fallacious observation to the notion that built, therefore must mean. Council, this is Judge Moore. I'm still struggling to understand what is wrong with the board's construction, which includes building from scratch and modifying preexisting programs. So long as we understand modifying to include the check, the options, and then generate an incentive program based on the options you choose. That's what Kelly does. And I guess why I'm confused is I thought I understand stood appellant to agree that that would be within his claims scope as well. So I, I I'm very confused about what, what the dispute is over claims scope in light of what was presented to me in the oral argument today. Can you help me understand that? You know, your honor, I'm equally confused to be perfectly frank with you because that admission that I just heard Mr. Right. Am I right? Counseling understanding that Kelly is, you know, one of these check the boxes, like imagine I want to build a car on, you know, a website, you know, go to Toyota and I want to build my car. You know, I start with, you know, which model. And then I check that box. And then I start with, you know, I don't know the drive system. And I checked that box and then I picked the color and then I picked the interior. And at the end, you know, they show me this beautiful picture of my car. That seems very similar to what Kelly presents in order to allow you to build an incentive system. Am I right? I mean, is that your understanding of Kelly as well? That is my understanding of Kelly, your honor. And that was the board's understanding of Kelly. And I think with that admission from Mr. Waldrop, I think that the, the dispute over whether or not Kelly and combination with Stanek or Wong teaches an incentive program builder application. That dispute is at an end. Well, I kind of am inclined to agree with you, but I'm sure that he's going to stand up and say something different, but, but I kind of feel like he mooted the disagreement in, in terms of what he, by explaining that his claim construction would in fact include this pick options to create your own incentive structure scenario, because whatever his claim construction is, Picking options to generate your own program is exactly what Kelly does. Right? That's exactly right. Your honor. Kelly describes prize tables, tournament tables. They describe interfaces that allow the upload of still images and ambitions, other graphical content, which will customize the display of these incentive programs. Kelly describes joining and combining incentive programs where you play one program in order to become eligible for another. And these are all selections that are B that are advanced to the sponsor. And the sponsor is able to build incentive programs based on their particular custom requirements and to have those incentive programs deployed to consumers. So I think your honor is absolutely right. That with that admission, I think that dispute over the old four, four is at an end. Now there was one remaining issue on the old four, four that has to do with the object association application. But again, as we pointed out in our briefs, Croy has only challenged the board's findings under brown two of the old four, four petition, but has not challenged the board. I just want to clarify one, one thing you have been suggesting that if we agree on this incentive builder and center incentive program, builder application construction, the case is over, but that's not right. Is it? I mean, didn't they make a few arguments about whether it's analogous arts or motivation to combine? Didn't they make a few arguments? He didn't get to them in his opening today, but in his brief he did about the combination of say Kelly and view of Stanek and halter or Kelly and view of long. Didn't he make arguments on those points too? So this is not just a matter of if we agree with your claim construction, the case is over. Is it? Well, your honor, I think the fact that he did not raise those issues on his argument is, is an indication of how weak these arguments are. As the board has five pages discussing the analogous, this and the motivations to combine Kelly with these other references. And those motivations stem from the fact that Kelly is an internet deployed worldwide web gaming system that uses HTML to deliver that content and receives input from sponsors using standard HTML forms, forms that persons of skill in the art would recognize as the type of web forms through which input is made. And these web pages are generated as Stanek. And as Juan both described at the server end by drawing information, that's been input by sponsors from databases and using CGI and various other techniques to generate dynamically web pages that are delivered to the consumers. So Stanek and Juan both described basically the tools that Kelly is using and Kelly discloses in the delivery of its game. So the motivation I think is without question. And the fact that they haven't addressed that on argument suggests to me the weakness that they, that they themselves realized in those arguments. Counsel, counsel argument is short. And if I hadn't brought it up, you wouldn't have addressed it either. Should I assume therefore your arguments were equally weak? No, your honor, that's a good point. And I, I, I, I concede that fact. I think that I think that the, the, the arguments are fairly well developed within the final written decision and in our briefs as to exactly why a person of skill in the art would be motivated to combine these two references that speak of the tools used by Kelly and explain their views with, with the Kelly reference to arrive at the patented invention. The, and the fact is that the board also found that Kelly alone has many of these features. It has the builder application. It has the interface from which the sponsor inputs that information. It deploys that incentive program to the, to the consumers. It's not even necessary under the board's constructions for the most part to arrive at a combination between Kelly and standard or Kelly and one only in, in certain respects. Would that be necessary? So in large measure, your honor, I think that the board's decision on Kelly alone would be sufficient. I wanted to just mention the object association application. That was one other lingering hanging chat chat on this. But as I said, round four independently establishes the existence of that limitation in the combination of Kelly and one. And therefore the fact that Croy has not challenged that ground, uh, means that those claims 10 and 12 would stand rejected. Uh, even if, uh, you were to accept their arguments on ground to your office. Um, I see that my time has elapsed. If, if the court has any further questions, I know I won't have an opportunity necessarily to address it in its upcoming rebuttal. Thank you, Mr. Dustin, Mr. Waldrop, you have rebuttal time, please proceed. Thank you, your honor. First, I want to clarify there. There was no admission as to Kelly, your honor, uh, the way characterized by my opposing counsel. First, Kelly does not describe the check options in order to build a new program or even a new game. Kelly takes an existing computer program and allows the operator to only change the prize parameters. Kelly does not use a template to allow building a new program or even a new game. Kelly has a tournament system, which is not an incentive program and without the underlying game that is played during the tournament. To be clear, the board made no finding that creating a tournament and Kelly system is akin to building a new incentive program. The board found the tournament is a builder application only under its erroneous construction merely because they can modify tournament parameters. Moreover, even if the court accepted the board's claim construction, uh, the board made no analysis regarding building an incentive program from scratch. There's no finding that any of these references could build a new incentive program from scratch. So even if you accepted the board's claim construction, the board made no finding as to the first prong of his claim construction. And in fact, only focused on the modifying preexisting, preexisting incentive programs, you know, even under its own terms, it would not fit. I'll stop you. I understand what you're saying. I mean, you say even accepting the board's construction, they didn't make a finding that the Kelly disclosed building from scratch, but the board's claim construction doesn't require that. Why would they make such a fine? Why did they have to make such a fine? Because they never found that any of the references could build an incentive program from scratch. There's no reference to that at all. In the, in the written decision, they prom they promulgate a claim construction and make no finding as to whether or not the references can build from scratch, which does not support substantial evidence of invalidity. So that is the anomalous thing about this written decision is that there's no mentioning of any of these references, having the ability to build from scratch. That's why Croy's construction is the most reasonable one, because look, we just require that the incentive program builder that meets the claims has to be able to build an incentive program from scratch. It has to be able to generate it. The board's claim construction of build applications are erroneous because it does not require the fundamental characteristic of being a builder to build a new application from scratch. It's too broad because it covers tools that can only modify, but that can't build. Now the court needs to address claim one-on-one, regardless of the builder issue, because claim one-on-one has a separate requirement of sponsor request to validate. You would ask where in our briefing that was. I point the court to the reply brief pages 23 and 24. We have citations, the original briefing where we raised the validation issue, as I discussed before, which was a new issue on appeal, your honor. All right. Thank you, counsel. This case is taken under submission. Thank you. Thank you. The honorable court is adjourned until tomorrow morning at 10 a.m.